

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| AMY JOHNSON, | ) | No. ED101197 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Richard C. Bresnahan |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 12, 2015 |

### *Introduction*

Amy Johnson (Movant) appeals the judgment denying her Rule 24.035 motion to vacate her conviction and sentence for voluntary manslaughter entered after a guilty plea. Movant contends the motion court clearly erred in denying her motion because: (1) her conviction for voluntary manslaughter violated her right to be free from double jeopardy because she was previously convicted of second-degree assault for the same act; and (2) collateral estoppel precluded the plea court's finding that Movant "knowingly" caused the victim to suffer serious physical injury because her earlier assault conviction established that she had acted "recklessly." We affirm.

### *Factual and Procedural Background*

In July 1994, Movant shook K.M. (Victim), then an infant, causing serious physical injury. The State charged Movant with first-degree assault and endangering the welfare of a child. In October 1995, the State amended the information to reduce the first-degree assault

1

charge to second-degree assault. The amended information alleged that Movant "recklessly caused serious physical injury to [Victim] by shaking her." Movant pleaded guilty to second-degree assault and endangering the welfare of a child.

Victim died in December 17, 2007 as a result of the injuries Movant inflicted. Thereafter, the State charged Movant with second-degree murder resulting from the perpetration of felony abuse of a child. Movant filed a "Motion to Dismiss Indictment for Violation of Defendant's Rights Against Double Jeopardy," arguing that prosecution for second-degree murder violated her right to be free from double jeopardy because she was previously convicted of second-degree assault, a lesser included offense of felony murder. Movant also filed a "Motion to Dismiss for a Violation of Due Process and Collateral Estoppel" in which she claimed that collateral estoppel barred the prosecution for second-degree murder because the State was proceeding under the theory that Movant acted "knowingly," even though the earlier judgment established that she acted "recklessly."

On March 2, 2011, the trial court heard arguments and denied Movant's motions to dismiss the second-degree murder charge. On March 14, 2011, the State amended the information, reducing the second-degree murder charge to voluntary manslaughter, and Movant pleaded guilty.

At the plea hearing, Movant informed the plea court that she had sufficient opportunity to discuss her case with her lawyer, she understood that by pleading guilty she was "giving up" the rights attendant to a trial, and she wished to plead guilty to voluntary manslaughter. The prosecutor announced that, if the case proceeded to trial, the State would present evidence proving that "the defendant was baby-sitting [Victim] back on July 14th of 1994, the defendant shook [Victim] because [Victim] was crying, [Victim] subsequently died in December of 2007

2

from her injuries." Movant affirmed that the prosecutor's statements were "substantially true and correct." The prosecutor then stated that the range of punishment for voluntary manslaughter was five to fifteen years' imprisonment and recommended that Movant "be sentenced to 14 years in the Missouri Department of Corrections." Movant assured the plea court that she understood the range of punishment and the State's recommendation and she was "pleading guilty because [she was] guilty." The plea court found that Movant entered her guilty plea freely, intelligently, and voluntarily and accepted the plea. After a sentencing hearing in May 2011, the plea court sentenced Movant to fourteen years' imprisonment

Movant filed a pro se Rule 24.035 motion to vacate, set aside, or correct the judgment or sentence, which counsel later amended. In her motion, Movant claimed that the plea court erred in convicting her of voluntary manslaughter because, among other reasons: (1) the conviction resulted in a second punishment for a crime for which she was previously punished in violation of her rights to due process and to be free of double jeopardy; and (2) collateral estoppel precluded the trial court from finding her guilty of knowingly committing voluntary manslaughter because it previously found that she acted recklessly.[1]

The motion court entered findings of fact and conclusions of law denying Movant's Rule 24.035 motion. The motion court reasoned that the voluntary manslaughter conviction did not violate Movant's rights to due process or to be free from double jeopardy because "the prosecution for the homicide of a person previously convicted of an assault from which the death afterwards ensued does not place the accused twice in jeopardy for the same offense."

---

[1] Movant did not request and the motion court did not conduct an evidentiary hearing on Movant's Rule 24.035 motion. The parties agreed that the case could be resolved based on the trial court's records from the 1995 and 2011 cases, and the motion court took judicial notice of those files.

Additionally, the motion court found that Movant's collateral estoppel claim "is not a cognizable claim under a rule 24.035 motion." Movant appeals.

### *Standard of Review*

Our review of the motion court's decision in a Rule 24.035 proceeding is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035; Feldhaus v. State, 311 S.W.3d 802, 804 (Mo. banc 2010). The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the court is left with a definite and firm impression that a mistake was made. Garris v. State, 389 S.W.3d 648, 650 (Mo. banc 2012). "Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling." Id. at 650-51.

### *Discussion*

#### *1. Double Jeopardy*

In her first point, Movant claims that the motion court clearly erred in denying her Rule 24.035 motion because her convictions for second-degree assault and voluntary manslaughter based on a single act violated Section 556.041(1)[2] and her right to be free from double jeopardy. More specifically, Movant contends that she "suffered multiple punishments for the same

---

[2] Section 556.041(1) provides:
> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if . . . (1) One offense is included in the other . . . .

Section 556.041(1) is effectively a codification of the same-elements test that the Supreme Court of the United States articulated in Blockburger v. U.S., 284 U.S. 299, 304 (1932). State v. Daws, 311 S.W.3d 806, 808 n.3 (Mo. banc 2010). "The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." U.S. v Dixon, 509 U.S. 688, 696 (1993).

4

offense" because second-degree assault is a lesser included offense of voluntary manslaughter.[3] The State counters that the motion court did not err in denying Movant post-conviction relief because Movant waived her right to be free of double jeopardy when she voluntarily and intelligently pleaded guilty to the reduced charge of voluntary manslaughter.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states pursuant to the Fourteenth Amendment, protects defendants from successive prosecutions for the same offense after an acquittal or conviction and from multiple punishments for the same offense."[4] Wilder v. State, 301 S.W.3d 122, 127 (Mo.App.E.D. 2010) (internal quotation omitted). "The prohibition against multiple punishment is 'designed to ensure that the sentencing discretion of the court is confined to the limits established by the legislature." Hagan v. State, 836 S.W.2d 459, 462 (Mo. banc 1992) (quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984) (overruled on different grounds by State v. Heslop, 842 S.W.2d 72 (Mo. banc 1992)). "[D]ouble jeopardy attaches to a guilty plea upon its unconditional acceptance." Peiffer v. State, 88 S.W.3d 439, 444 (Mo. banc 2002).

Rule 24.035 permits "claims that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States." Rule 24.035(a). "A guilty plea waives, however, all constitutional and statutory claims except jurisdictional defects and claims that the guilty plea was not made knowingly, voluntarily, and intelligently." Stanley v. State, 420 S.W.3d 532, 544 (Mo. banc 2014). Like other constitutional protections, the right

---

[3] Although both of Movant's points relied on allege violations of her rights to due process and freedom from cruel and unusual punishment, she provides no legal support for these arguments. See e.g., State v. Couts, 133 S.W.3d 52, 53 n.1 (Mo. banc 2004).

[4] Movant rests her double jeopardy claim on the Fifth Amendment of the United States Constitution. The Missouri Constitution offers no basis for relief as it provides that "no person shall be put again in jeopardy of life or liberty for the same offense, *after being once acquitted by a jury* . . . ." Mo. Const. art. I, § 19 (emphasis added). See also State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992).

to freedom from double jeopardy is subject to voluntary and intelligent waiver. See Ricketts v. Arizona, 483 U.S. 1, 8 (1987); Rost v. State, 921 S.W.2d 629, 635 (Mo.App.S.D. 1996).

Movant does not challenge the knowing, voluntary, and intelligent nature of her guilty plea. In any event, the record reflects that Movant entered her guilty plea with the advice of counsel, pursuant to a negotiated plea agreement, and for the purpose of limiting her exposure to a lesser range of sentencing. More specifically, Movant sought the disposition she now challenges. The question, therefore, is whether Movant's double jeopardy claim constitutes a jurisdictional defect where she has negotiated a plea and sought the challenged disposition.

Movant claims that the motion court clearly erred in refusing to set aside her plea because "[d]ouble jeopardy is jurisdictional, and will be addressed where plain on the record even after a plea of guilty waives all other appeals." In support of this proposition, Movant cites Feldhaus v. State, which is factually and legally inapposite. 311 S.W.3d at 805. In Feldhaus, the movant pleaded guilty as a chronic offender to two counts of driving under the influence of drugs and, subsequently, filed a Rule 24.035 motion claiming that the statute defining the term "chronic offender" was unconstitutionally vague. Id. at 803-04. In holding that, by pleading guilty, the movant waived his due process claim based on the void for vagueness doctrine, the Court noted: "Except for certain double jeopardy claims not relevant to this case, constitutional claims raised after a plea of guilty are nonjurisdictional." Id. at 805. Importantly, the Feldhaus Court did not address a double jeopardy challenge.

Movant does not explain with any specificity why, in this case, her double jeopardy claim is jurisdictional. In general, "[i]t is well-settled law that double jeopardy is a personal right which is waived if not properly raised." State v. Harp, 101 S.W.3d 367, 376 (Mo.App.S.D. 2003). See also U.S. v. Herzog, 644 F.2d 713, 716 (8th Cir. 1981) (double jeopardy is a personal

6

defense and not jurisdictional). Nevertheless, the Missouri Supreme Court has held: "A guilty plea does not waive a subsequent claim of a double jeopardy violation if it can be determined from the face of the record that the sentencing court had no power to enter the conviction or impose the sentence." State v. Neher, 213 S.W.3d 44, 48 (Mo. banc 2007). "In determining whether such a jurisdictional defect is evident on the face of the record, Missouri courts will consider 'the State's information or indictment and the transcript of a movant's guilty plea.'" State ex rel. Green v. Moore, 131 S.W.3d 803, 806 (Mo. banc 2004) (quoting Hagan, 836 S.W.2d at 461). Movant points us to neither the amended informations nor the transcripts of her guilty pleas. We therefore are unable to conclude that the "face of the record" demands the conclusion that the plea court had no power to enter the voluntary manslaughter conviction.[5] See, e.g., Wright v. State, 453 S.W.3d 234, 240 (Mo.App.W.D. 2014).

Our review of decisions from various federal and state courts reveals a consensus that a defendant waives her double jeopardy claim when she negotiates a plea agreement and enters a guilty plea to a lesser charge. The Indiana Supreme Court's decision in Griffin v. State exemplifies this approach. 540 N.E.2d 1187 (Ind. 1989). There, the defendant, who was originally charged with four counts of murder arising out of his role in the arson-related deaths of four victims, pleaded guilty to four counts of assisting a criminal. Id. at 1188. The defendant later claimed that the constitutional prohibition against double jeopardy barred sentencing on the

---

[5] The case of J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249 (Mo. banc 2009) appears to be influencing jurisprudence with respect to double jeopardy claims. In State v. Shinkle, the Western District stated: "In light of Webb, double jeopardy claims can no longer be considered jurisdictional because they do not affect the trial court's exercise of personal or subject matter jurisdiction." 340 S.W.3d 327, 333 n.5 (Mo.App.W.D. 2011). We note that State ex rel. Green v. Moore and Hagan, the primary basis for State ex rel. Green, were decided before Webb. We conclude that whether we analyze this case either under State ex rel. Green or a more Webb-friendly paradigm, Movant has not sufficiently identified any record support for a finding that the plea court lacked jurisdiction or authority to enter a voluntary manslaughter conviction.

7

four counts because all four arose from the same event. Id. The Supreme Court of Indiana affirmed the convictions because the defendant could not have challenged the original murder charges on double jeopardy grounds and the State reduced those charges as a result of a plea agreement. The Griffin Court concluded: "[O]nce [Defendant] bargained with the State for a reduction in charge and pled to the reduced charges, he could not challenge the reduced charges on double jeopardy grounds." Id. See also Dermota v. U.S., 895 F.2d 1324, 1325 (11th Cir. 1990); U.S. v. Pratt, 657 F.2d 218, 220 (8th Cir. 1981); U.S. v. Singleton, 897 F. Supp. 1268, 1273-74 (N.D. Cal. 1995) (affirmed by 92 F.3d 1195 (9th Cir. 1996)); Games v. Indiana, 743 N.E.2d 1132, 1135 (Ind. 2001); Armstrong v. Idaho, 127 Idaho 666, 668 (Idaho 1995); Novaton v. Florida, 634 So.2d 607, 609 (Fla. 1994); State v. Gobert, 865 So.2d 779, 785 (La.App. 2003).

Like the defendant in Griffin, Movant originally faced a murder charge, and the State reduced the charge pursuant to a plea agreement. Movant concedes that the prohibition against double jeopardy would not have prevented the trial court from convicting her on the original charge of second-degree murder, a more serious offense which carries a maximum sentence of "thirty years, or life imprisonment."[6] Mo. Rev. Stat. § 558.011.1(1). Rather than risk a potential life sentence, Movant negotiated a plea agreement pursuant to which the State reduced the charged offense from second-degree murder to voluntary manslaughter, thereby lowering the maximum punishment to fifteen years' imprisonment. The State also agreed to recommend a fourteen-year prison sentence, and Movant received the agreed upon sentence. Movant "should

---

[6] Convictions for assault and second-degree murder do not violate the prohibition against double jeopardy because the legislature intended cumulative punishments for felony murder and any related felony other than murder or manslaughter. See State v. Barker, 410 S.W.3d 225, 236 (Mo.App.W.D. 2013). See also State v. Mendoza, 115 S.W.3d 873, 876 (Mo.App.W.D. 2003) (affirming the defendant's convictions for child abuse and second-degree murder).

8

not be allowed to retain the benefits of the [plea] agreement while raising double jeopardy as a bar to fulfillment of [her] obligations under the agreement." Armstrong, 127 Idaho at 668.

Furthermore, "a defendant may not take advantage of self-invited error or error of [her] own making." State v. Bolden, 371 S.W.3d 802, 806 (Mo. banc 2012). To the extent that Movant's voluntary manslaughter conviction raised any double jeopardy concerns, Movant waived the issue when she knowingly and voluntarily entered the negotiated plea agreement and received the benefit of a reduced maximum sentence.[7] The motion court did not clearly err in denying Movant's motion for post-conviction relief because the conviction and sentence she received resulted from a knowingly, intelligently, and voluntarily negotiated plea agreement. "No criminal trial or judgment should be affected, in any manner, by an error committed at the instance of the defendant." State v. Mashek, 336 S.W.3d 478, 484-85 (Mo.App.S.D. 2011). Point denied.

### 2. Collateral Estoppel

In her second and final point, Movant claims the motion court clearly erred when it denied her Rule 24.035 motion because the doctrine of collateral estoppel barred her conviction for voluntary manslaughter. Specifically, Movant contends that, because her second-degree

---

[7] We note, however, that although we do not need to reach the substantive issue of whether double jeopardy principles barred Movant's conviction for voluntary manslaughter, the Supreme Court's decision in Diaz v. U.S., 223 U.S. 442 (1912) supports the motion court's finding that Movant's prosecution did not place Movant twice in jeopardy for the same offense. In Diaz, the Court held that the prohibition against double jeopardy did not bar the defendant's prosecution for homicide subsequent to a conviction for assault and battery where the victim died after the first conviction. Id. at 449. See also Garrett v. U.S., 471 U.S. 773, 791 (1985). "In the case of delayed death . . . Blockburger does not bar a second prosecution for homicide following conviction of assault or another nonhomicide offense because the consummating element of death distinguishes the two offenses, and is not known to or discoverable by the [State] at the time of the first prosecution." People v. Latham, 83 N.Y.2d 233, 238-39 (N.Y. 1994). See also New Hampshire v. Hutchinson, 156 N.H. 790, 792, 794 (N.H. 2008).

assault conviction established that she acted "recklessly" when she injured Victim, the plea court "lacked jurisdiction or authority to re-litigate that issue" and find that she acted "knowingly." In response, the State asserts that collateral estoppel did not bar Movant's conviction for voluntary manslaughter because Movant's "prior conviction of assault in the second degree for recklessly causing serious physical injury is not inconsistent with [Movant's] later admission that she knowingly caused Victim's death . . . ."

"The application of collateral estoppel is a doctrine which is embodied in the 5th Amendment guarantee against double jeopardy." State v. Dowell, 311 S.W.3d 832, 837 (Mo.App.E.D. 2010). Collateral estoppel "means simply that when an issue of ultimate fact has been determined by a valid final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 838 (Mo.App.E.D. 2010) (quotation omitted). To establish collateral estoppel the defendant has the burden to show that the prior judgment "*necessarily* decided the issues now in litigation." Id. (emphasis in original) (quotation omitted).

As previously stated, "a guilty plea waives all nonjurisdictional defects, including statutory and constitutional guarantees." Feldhaus, 311 S.W.3d at 805. Movant asserts that her collateral estoppel claim was not waived because it is jurisdictional, arguing: "the court had no subject matter jurisdiction to re-litigate the issue of [her] mental state."

Contrary to this assertion, Movant's collateral estoppel claim is not jurisdictional. See e.g., Schmidt v. State, 292 S.W.3d 574, 576-77 (Mo.App.S.D. 2009). In Webb, the Supreme Court defined subject matter jurisdiction as "the court's authority to render a judgment in a particular category of cases." 275 S.W.3d at 253. The Missouri Constitution grants circuit courts subject matter jurisdiction over criminal cases. Id. Therefore, the plea court "unquestionably had subject matter jurisdiction to accept [Movant's] guilty plea." Schmidt, 292

10

S.W.3d at 574. We conclude that Movant waived any collateral estoppel claim when she knowingly and intelligently pleaded guilty pursuant to a negotiated plea agreement. Point denied.

### Conclusion

The judgment of the motion court is affirmed.

_____

PATRICIA L. COHEN, JUDGE

Angela T. Quigless, Chief Judge and Sherri B. Sullivan, Judge, Concur.